ROBERT J. TOOTHMAN and PHYLLIS M. TOOTHMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Toothman v. Commissioner
Docket No. 7083-76.
United States Tax Court
T.C. Memo 1978-140; 1978 Tax Ct. Memo LEXIS 377; 37 T.C.M. (CCH) 603; T.C.M. (RIA) 780140; April 11, 1978, Filed *377 Petitioner, a United States citizen, was employed by the Congress of Micronesia, Trust Territory of the Pacific Islands, Saipan, Mariana Islands. During such employment he resided in the Trust Territory. Held, the Congress of Micronesia, as well as the other branches of the Trust Territory government, is an "agency" of the United States within the meaning of sec. 911(a)(2), I.R.C. 1954. Accordingly, petitioner's salary is not excludable from his gross income. Robert J. Toothman, pro se. Vernon R. Balmes, for the respondent. STERRETT
*378 MEMORANDUM FINDINGS OF FACT AND OPINION STERRETT, Judge: Respondent determined a deficiency in petitioners' Federal income tax in the amount of $5,249.52 for the 1973 calendar year. The sole issue for decision is whether the Congress of Micronesia is an agency of the United States within the meaning of section 911(a)(2), I.R.C. 1954. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.
Petitioners, Robert J. and Phyllis M. Toothman, husand and wife, resided in Aiea, Hawaii at the time the petition herein was filed. They timely filed their 1973 joint Federal income tax return for the taxable year 1973 with the director, international division, internal revenue, Philadelphia, Pennsylvania. Hereinafter, for convenience, Robert J. Toothman shall sometimes be referred to as petitioner. Petitioner, a United States citizen, while residing in Honolulu, Hawaii, responded to *379 an advertisement placed by the Congress of Micronesia seeking applications for a budget officer. On September 6, 1972 petitioner entered into a two year contract with the Congress of Micronesia, Trust Territory of the Pacific Islands, Saipan, Mariana Islands, to act as a program and budget officer in the legislative counsel to the Congress of Micronesia. Thereafter petitioner relocated to the Trust Territory and commenced employment. The Trust Territory of the Pacific Islands is a group of more than 2,000 islands and atolls which are situated in the Western Pacific Ocean. Popularly referred to as Micronesia these islands include the Northern Mariana Islands, the Eastern and Western Caroline Islands, and the Marshall Islands. Between World War I and World War II, the Trust Territory islands had been under control of Japan which had held a mandate over these islands under the now defunct League of Nations. At the end of World War II the Trust Territory islands came under the military control of the United States. Following the establishment of the United Nations a trusteeship council assumed jurisdiction over nonself-governing territories, including the Trust Territory of the *380 Pacific Islands. Trusteeship agreements were entered into between the United Nations and those member nations which were in de facto control and possession of such territories at the end of World War II. On July 18, 1947, the United States accepted administrative responsibility for the people of Micronesia pursuant to a trusteeship agreement with the United Nations Security Council. Joint resolution of July 18, 1947, ch. 271, 61 Stat. 397. Under the trusteeship agreement the United States, as the administering authority, was vested with full powers of administration, legislation and jurisdiction over the Trust Territory in order to promote the objectives of the United Nations, to wit, the development of the economic, social, political and educational well-being of the people of the Trust Territory. Administration of the trusteeship was vested in the President of the United States by Section 1 of the Act of June 30, 1954, ch. 423, sec. 1, 68 Stat. 330, wherein Congress directed: That until Congress shall further provide for the government of the Trust Territory of the Pacific Islands, all executive, legislative and judicial authority necessary for the civil administration of *381 the Trust Territory shall continue to be vested in such person or persons and shall be exercised in such manner and through such agency or agencies as the President of the United States may direct or authorize. Responsibility for administration of the Trust Territory was divided between the United States Department of Interior and the Department of the Navy until 1962 when President Kennedy, by Executive Order No. 11021, 27 Fed. Reg. 4409 (1962), 48 U.S.C.A. sec. 1681 note, redelegated his authority for civil administration of the Trust Territory to the Secretary of the Interior. The Secretary of Interior was thereby authorized to: * * * take such actions as may be necessary and appropriate to carry out the obligations assumed by the United States as the administering authority of the trust territory under the terms of the trusteeship agreement and under the Charter of the United Nations. * * * And it was expressly stated in that Executive Order that: The executive, legislative, and judicial authority provided for in section 1 of this order may be exercised through such officers or employees of the Department of the Interior, or through *382 such other persons under the jurisdiction of the Secretary of the Interior, as the Secretary may designate, and shall be exercised in such manner as the Secretary, or any person or persons acting under the authority of the Secretary, may direct or authorize. * * * Under the above delegated authority the Secretary of Interior established a Trust Territory government comprised of executive, legislative and judicial branches. Executive authority in the government is vested in the High Commissioner who is appointed by the President of the United States with the advice and consent of the Senate. The High Commissioner is responsible "* * * for carrying out the international obligations undertaken by the United States with respect to the Trust Territory * * *." Department of Interior, Order No. 2918, Part II, sec. 1, 34 Fed. Reg. 157 (1969). The legislative body of the government, the Congress of Micronesia (hereinafter Congress), has legislative authority only as permitted by the Secretary of Interior (hereinafter Secretary), and such authority may be exercised only in accordance with the detailed procedures prescribed by the Secretary.Among the matters so regulated by the *383 Secretary are membership in the Congress, qualifications of legislators, compensation of legislators, the franchise, legislative sessions, adjournment of the Congress, and the form in which legislation is to be enacted. All legislation is subject to veto first by the High Commissioner, and in the event his veto is overridden, then by the Secretary. Furthermore the High Commissioner may, with the Secretary's approval, promulgate "urgent" legislation in the event the Congress fails to act. Communications of the government with foreign governments and international bodies are cleared through the Department of the Interior for transmittal by the Department of State. Judicial authority in the Trust Territory is vested in a chief justice and two associate justices, who are appointed by the Secretary. Thus, although this arrangement affords the citizens of the Trust Territory a limited degree of self-rule, it occurs only by reason of the Secretary of the Interior's order and is fully subject to his continuing supervision and direction. Theoretically the Secretary could disband the government at any time, choosing to fulfill the United States' obligations under the trusteeship agreement *384 through a different form of control. Under Department of Interior Order No. 2918, sec. 23, 34 Fed. Reg. 157 (1969), the Congress may appoint a legislative counsel and supporting staff and determine the applicable compensation for such positions. However the High Commissioner must submit the annual budget of the Trust Territory to the Secretary for approval and any subsequent deviations therefrom require the Secretary's prior approval. For its fiscal years ended June 30, 1971 through 1974, the Trust Territory submitted budget estimates to the Secretary of Interior of $125,000 per year for partial support of the operation of the Congress of Micronesia; and $125,000 was received and allocated by the Trust Territory for this purpose. No amounts were requested by the Congress from the Secretary for the fiscal year ended June 30, 1975. For the calendar year 1973 the Congress appropriated $5,150,926 of revenue for various purposes including $1,268,659 to the Congressional operations of which $125,000, as set forth above, was received from the United States. Petitioners each received wage and tax statements from the Trust Territory of the Pacific Islands, Saipan, Mariana *385 Islands setting forth 1973 wages and each filed, with their return, form 2555, Exemption of Income Earned Abroad, as follows: Description
Mr. Toothman
Mrs. Toothman
Total
Total salaries
$18,465
$1,230
$19,695
Noncash remuneration
3,600
3,600
Total income earned
outside U.S.
22,065
1,230
23,295
Amount Exempt
17,400
1,230
18,630
Taxable Income
$ 4,665
0
$ 4,665
Respondent in his statutory notice, dated May 5, 1976, determined "* * * that the government of the Trust Territory of the Pacific Islands is an agency of the United States within the meaning of section 911(a)(2) * * *. Accordingly your taxable income for 1973 is increased $18,630.00 * * *." OPINION Initially we note that, although petitioner alleged in the petition that respondent erred in not excluding from income $18,630 of foreign wages and income, he has not presented any evidence with respect to the excludability of Mrs. Toothman's $1,230 of foreign wages. Clearly, the burden of proof is upon petitioner to show that respondent erred. Welch v. Helvering,290 U.S. 111 (1933), Rule 142(a), Tax Court Rules of Practice and Procedure.[1] Accordingly, only *386 Mr. Toothman's exclusion of $17,400 is in issue. Moreover the parties agree that the sole issue for our decision is whether petitioner received wages "paid by the United States or any agency thereof." Section 911(a)(2). [2] If we find that petitioner's employer was an "agency" of the United States, then petitioner's wages, or any part thereof, are not excludable from gross income. *387 Respondent contends that it is well established that the government of the Trust Territory of the Pacific is an agency of the United States. McComish v. Commissioner,64 T.C. 909 (1975), appeal docketed No. 76-1486, 9th Cir., Feb 12, 1976; Groves v. United States, not officially reported ( N.D. Fla. 35 AFTR 2d 75-817, 75-1 USTC par. 9212), affd. 533 F.2d 1376 (5th Cir. 1976). Petitioner, cognizant of the aforenoted cases and in an ably written pro se brief, attempts to distinguish these cases asserting that taxpayers therein were employed by the executive branch of the Trust Territory government while petitioner was an employee of the legislative branch--the Congress of Micronesia. Therefore petitioner argues that, although the Secretary of Interior could veto any law enacted by the Congress or could withdraw the right of legislative power from the Congress, the Secretary could not require the body to act as his agent. We believe petitioner miscontrues our opinion in McComish v. Commissioner,supra (as well as Groves v. United States,supra). Moreover petitioner's additional contetions are the same *388 as those discussed and found inapplicable in McComish and we see no useful purpose in presenting them, again, herein. [3] In short, the Trust Territory government (Executive, Judicial and Legislative branches) is the means of carrying out a governmental function of the United States. The fact that the Congress, as well as the other branches, has a limited degree of independence or self-rule is not determinative when this objective accords with the trusteeship agreement to permit and encourage self-government and self-development. The Trust Territory government "* * * is plainly an instrumentality of United States policy, * * *" deriving its authority to act with the sanction of the United States, and "* * * wholly subject to the control and direction of the United States * * *." McComish,supra at 916; see, also, Lassiter v. Guy F. Atkinson Co.,176 F.2d 984 (9th Cir. 1949). Accordingly, the government of the Trust Territory, including the Congress of Micronesia, is an "agency" of the United States within the meaning of section 911(a)(2), and petitioner's salary cannot therefore be excluded from gross income. *389 Decision will be entered for the Respondent. Footnotes
1. However, as Mrs. Toothman's 1973 W-2 form indicates that wages of $1,230 were paid by the Trust Territory of the Pacific Islands, Saipan, Mariana Islands and that she resided in the Trust Territory, it appears that the issue of excludability is the same for both petitioners. ↩
2. SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (a) General Rule.--The following items shall not be included in gross income and shall be exempt from taxation under this subtitle: * * *
(2) Presence In Foreign Country for 17 Months.--In the case of an individual citizen of the United States who during any period of 18 consecutive months is present in a foreign country or countries during at least 510 full days in such period, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) which constitute earned income attributable to services performed during such 18-month period. The amount excluded under this paragraph for any taxable year shall be computed by applying the special rules contained in subsection (c).↩
3. For example, the United States Department of Labor determined that petitioner's employment in 1973 was not in the employ of the United States or an instrumentality thereof as defined under 5 U.S.C. 8501 and denied him Federal unemployment compensation claimed on the basis of his service for the Congress of Micronesia. Therefore petitioner contends that, under the Department of Labor's interpretation, his 1973 wages also should be excluded from gross income under sec. 911(a)(2). However, "* * * the dimensions of the term 'agency' may expand * * * [and] each statute must be examined independently in light of the situation to which it is addressed * * *." McComish v. Commissioner,64 T.C. 909, 918-919↩ (1975).